MICHIGAN CITY NEWS, INC. *v.* DEPARTMENT OF TREASURY ET AL.

[No. 17,361.   Filed June 12, 1945.]

*Thomas C. Mullen,* of Michigan City, and *Arnold, Degnan, Goheen* and *Zimmerman,* of South Bend, for appellant.

*James A. Emmert,* Attorney General, *John J. McShane, Winslow Van Horne, John H. Fetterhoff* and *Fred C. McClurg,* Deputy Attorneys General, for the appellees.

ROYSE, C. J.—Appellant brought this action against appellees for the recovery of gross income taxes allegedly improperly assessed and collected. The facts out of which the controversy arose are as follows:

For several years prior to June 1, 1938 appellant, a corporation, printed and published a newspaper in Michigan City known as the Michigan City News. The capital stock of appellant was owned by three or four stockholders. On June 1, 1938 appellant entered into a contract with the Dispatch Publishing Company, Inc. (which Company will be hereinafter designated as the "Purchaser") for the sale of most of its assets. By the terms of this contract appellant agreed to sell to the Purchaser all of its tangible and intangible assets excepting accounts receivable, money on hand, money in bank, currency and remittances in transit, and bills owing to it. Appellant agreed to deliver a conveyance in escrow with proper bill of sale. It also agreed to pay and discharge all obligations due by it and to make a deposit of $10,000.00 in bonds issued by the Purchaser to guarantee the payment of such obligations. Appellant further agreed to secure the complete discharge and extinguishment of an existing mortgage on its real estate.

The Purchaser agreed to pay appellant, or such payee as it might direct, for said property the sum of $240,000.00, payable as follows: $125,000.00 in cash and $115,000.00 in bonds secured by a mortgage on all the property of the Purchaser including that acquired in this transaction. Thereafter, the Purchaser made such cash payment and delivered said bonds to the Citizens Bank of Michigan City as escrowee. Said escrowee paid $27,000.00 to the Merchants National Bank of said City to liquidate the mortgage on appellant's real estate. The balance of said cash sum was, pursuant to a contract between appellant and its stockholders, paid by the escrowee directly to appellant's shareholders. With the exception of $10,000.00 of the bonds which were retained by said escrowee to indemnify the Purchaser against debts of appellant, said bonds were also distributed to appellant's shareholders.

On June 1, 1938 appellant's Board of Directors and stockholders held special meetings which approved the contract of sale and the agreement for distribution of the proceeds of said sale to appellant's stockholders. At the stockholders' meeting held on said date a resolution was adopted authorizing appellant to acquire all but four shares of the capital stock owned by its stockholders. The meeting further authorized and directed the appropriate officers of appellant to execute contracts and make the transfer of its assets to the Purchaser. The meeting of the Board of Directors authorized and directed the President and Secretary of appellant to execute said contracts and to effect the transfer by deed and bill of sale. On June 22, 1938 the stockholders of appellant met in special meeting and ratified the transfer, etc., and pursuant to the terms of the contract proceeded to and did elect new directors. On the same date the newly elected directors met and elected new officers

and directed the stockholders to deliver to the Treasurer of appellant for cancellation their respective certificates of stock.

At the trial the facts were all stipulated and were substantially as above set out. The assignment of error here is that the trial court erred in overruling appellant's motion for a new trial. The only specification of this motion which is presented for our consideration is that the decision of the trial court is contrary to law.

Appellees contend the Bill of Exceptions was not presented, tendered, signed and settled by the Court and incorporated in the record within the time allowed and designated by the Court, to-wit: 30 days. The Bill of Exceptions was filed within 90 days from the overruling of the motion for a new trial. This was sufficient under Rules 2-2, 2-3, 1943 Revision, Rules of the Supreme Court. *Phillips* v. *Townsend* (1944), 115 Ind. App. 273, 56 N. E. (2d) 856; *Smith, County Auditor* v. *American Creosoting Company, Inc.* (1943), 221 Ind. 613, 50 N. E. (2d) 915.

Appellant contends that under the plan adopted there was no "gross income" or "gross receipts" to the corporation because the shares of stock surrendered to the corporation were of no value at the time of their surrender, and, with the possible exception of the $27,000.00 applied to the payment of the mortgage, appellant did not receive "cash, notes, credits and/or other property which is received by (it) or is received by a third person for (its) benefit," as provided by § 1 (h), Acts 1937, ch. 117, p. 604, § 64-2601-(h), Burns' 1943 Replacement. Appellant further contends that under Regulations 1505 and 2804, Series III, effective July 1, 1937, it was not liable for gross income tax on this transaction.

Section 1-(m), Acts 1933, ch. 50, as amended [Acts 1937, p. 604, § 1-(m), § 64-2601-(m), Burns' 1943 Replacement], provides in part as follows:

"The term 'gross income' . . . means the gross receipts of the taxpayer . . . received from the sale, transfer, or exchange, of property, tangible or intangible, real or personal, including the sale of capital assets . . . "

In our opinion, appellant, by the transaction here involved, sold the major portion of its assets for $240,000.00. It owned these assets. They were not owned by the stockholders who, as individuals, could not legally have transferred them to a purchaser. The fact that appellant made an arrangement whereby the purchaser paid the purchase price to an escrow agent, who in turn paid the proceeds of the transaction, except the amount paid on the mortgage, directly to the stockholders does not change the situation. The corporation in fact received $240,000.00 for the transfer of its property to the Purchaser. Certainly appellant would not seriously contend that if the Purchaser had paid this sum directly to it and it subsequently distributed this money to the stockholders, that it would not be taxable under the Gross Income Tax Law.

We are of the opinion that Regulation 1203, Series III, effective July 1, 1937, is applicable to the facts in this case. This Regulation provides:

"Whenever a party has a right to receive income which would be taxable to him when received, he cannot escape taxability on account of such money being paid to another for his benefit."

The portion of Regulation 1505, *supra*, relied on by appellant, provides as follows:

"Wherever a corporation distributes either cash or property, and the only consideration is the re-

turn and retirement of stock, it shall not be considered as having any gross receipts from such transaction subject to tax."

We cannot see where this Regulation has any application to the facts in this case. The Gross Income Tax Division is not asserting appellant is liable because it received from its shareholders stock for cancellation and retirement. Appellant's liability is based on the receipt of $240,000.00 for the sale of its property.

Regulation 2804, *supra*, provides as follows:

"Taxpayers selling property upon which there is a mortgage lien will be deemed to be selling only an equity therein when the mortgage lien is assumed by the purchaser, and only the amount received in cash, notes or other property will be reported for gross income tax. In all such cases the lien must actually exist against the property so sold. *However, when a taxpayer sells mortgaged property and uses the proceeds from such sale to satisfy the lien against it he will be considered as having taxable gross receipts in the full amount of the sale price.*"

The emphasized portion of this Regulation is applicable to this case. Unquestionably appellant sold the mortgaged property and used the proceeds of the sale to satisfy the mortgage lien.

Finding no error, the judgment of the LaPorte Superior Court is affirmed.

NOTE.—Reported in 61 N. E. (2d) 470.